# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ANTHONY W. REDLEY, | : | Bankruptcy No. 07-11534DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the Court is the objection (the "Objection") of the Chapter 13 Trustee (the "Trustee") to confirmation of Debtor's Fourth Amended Plan on the basis that Debtor has proposed only a 36-month plan but that the "applicable commitment period" is five years pursuant to 11 U.S.C. § 1325(b)(4). For the reasons that follow, I agree with the Trustee, and the Objection is sustained.

**BACKGROUND**

Debtor filed this case on March 14, 2007.[1] On March 27, he filed his Form 22C, Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period

---

[1] I shall take judicial notice of the docket entries in this case. Fed.R.Evid. 201, incorporated in these proceedings by Fed.R.Bankr.P. 9017. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

and Disposable Income ("Form 22C"). Line 16 of the Form 22C indicates that Debtor has a household size of one and, when compared to Line 15, that his income is above the median family income for a one-person household in Pennsylvania. Doc. No. 11. This result requires Debtor to designate an "applicable commitment period" of five years, and he did so. Id. His Schedule I filed contemporaneously does not indicate a spouse or dependents or any costs associated with them. Doc. No. 18. On August 7, 2007 Debtor amended his Form 22C to correct a mathematical error but not to change the commitment period which was once again designated as five years based on a household size of one. Doc. No. 95.

On October 15, 2007 Debtor filed his Third Amended Plan proposing a 36 month term.[2]  Doc. No. 100. Noting the reduced plan term, the Trustee's counsel stated that she questioned the length of the commitment period with Debtor's counsel.[3] On December 3, 2007 Debtor amended his Form 22C (the "Second Amended Form 22C") by increasing his household size to four. Doc. No. 119. His "current monthly income" remained unchanged from the prior Form 22C, but the increased household size places his income below the median family income for a Pennsylvania family of four, allowing him to designate an

---

[2] The two prior plans had a 48 month term which conflicted with the Form 22C designation but apparently generated no objection by the Trustee who was focusing on other deficiencies in Debtor's case, including the failure to file certain required documents. See Trustee's Motion to Dismiss (Doc. No. 91).

[3] According to counsel, after her questioning, "lo and behold, the amended B22C was filed, and the debtor now has a household size of four." Transcript at 8. Debtor's counsel acknowledges that the Trustee's questioning generated the amendment because he then "reexamined the issue"... "with Mr. Redley and found out that, in fact, he's been supporting three other persons"... "and now has another"... person that he's supporting." Id.

applicable commitment period of three years, and he did so. Exhibit T-2. An Amended Schedule I, was filed contemporaneously, now identifying a fiancé and three children, one of whom was born in November 2007. Doc. No. 118.[4] The newly filed documents now support the previously filed Third Amended Plan.[5]

The Trustee has objected to confirmation of Debtor's Fourth Amended Plan, which is a three-year plan based upon Debtor's Second Amended Form 22C, contending that the commitment period must be five years as Debtor's household on the date of filing, as represented in all his sworn documents filed before she challenged the commitment period, was one person. At the hearing on the Objection, the following facts were elicited.

In February 2007, a month before this case was filed, Debtor's girlfriend, Jaquetta Singleton ("Singleton"), moved into Debtor's residence with her two children (ages 5 and 8). Debtor is not the father of the children. Transcript of hearing held on January 3, 2008 ("Tr.") at 12. Singleton was employed when she moved in with Debtor, working approximately 20-30 hours per week, but she did not contribute to the household expenses. Tr. at 14, 21. Debtor's explanation of how Singleton came to live with him was: "Well, our relationship – she just moved in . . that's just the way the relationship went." Tr. at 19-20. However, it

---

[4] Debtor does not contend that the child born on November 2007 should be included in his household for purposes of determining the commitment period. This is consistent with his legal position that the date for determining the household size is the petition date.

[5] A Fourth Amended Plan was filed contemporaneously with the amended documents but did not differ from the Third Amended Plan with respect to the plan term, i.e., 36 months. It is this plan that is the subject of this contested confirmation hearing.

appears that Debtor did not view the move to involve support of Singleton and her children:

> "I didn't know that our relationship . . . like we were going to get married and that I would like have to help her take care of the kids because [*sic*] had a job. So I thought that she was still going to continue to do what she was doing, and I'd have kept doing what I was doing. But I actually had to like help her buy clothes and food to help out with the kids"

Tr. at 19-20.  For this reason, explained Debtor, he simply did not mention Singleton and her children to his attorney when he filed his bankruptcy case.  Id.  While he also states that he started to help her to get clothes and "stuff" for the kids and bought more food when she moved in, he reported his food budget on his Schedule I as $150 which was only allocable to him.  Thus, he testified, in March when the case was filed, he did not consider Ms. Singleton as his dependent.  Id.

Debtor's testimony also reveals that at some point after moving in with Debtor, Singleton's financial resources decreased.  One of her children's fathers who had been helping her "buying stuff sometimes and giving her money for food" stopped once he found out she had moved in with Debtor.  However, Debtor then clarified that the support had not been consistent, id. at 21, suggesting that this was not the precipitating factor that required Debtor to support Singleton and her children.  Rather in July 2007, she stopped working because of her pregnancy, and Debtor's financial support of Singleton and her children increased.  Id. at 23.  However, the amount and extent of Debtor's support of Singleton and her children at any time have not been established.[6]

---

[6] For example, Debtor was not asked whether Singleton received any unemployment benefits or public assistance.

**DISCUSSION**

The Trustee has brought his objection pursuant to 11 U.S.C. § 1325(b), which states in relevant part:[7]

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> . . .
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the <u>applicable commitment period</u> beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

<u>Id.</u> (emphasis added). The referenced "applicable commitment period" is defined in subsection (b)(4):

> (4) For purposes of this subsection, the "applicable commitment period"--
>
> (A) . . . shall be--
>
> (I) 3 years; or
>
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
>
> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
>
> (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

---

[7] Because Debtor filed bankruptcy after October 17, 2005, his case is subject to the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. S 256, 109-8, 119 Stat. 23 (2005) ("BAPCPA"). Section 1325(b) was one of the Code provisions amended by BAPCPA.

> (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4;

Id. As the Trustee has filed the Objection contending that the applicable commitment period is five, not three years, the provisions of § 1325(b)(1) come into play.

Identifying the issue for the Court's resolution, Debtor's counsel states "it depends on the family size of Mr. Redley <u>at the time that he filed</u>." Tr. at 6, l.4-5 (emphasis added). <u>See</u> <u>also</u> <u>id.</u> at 7; id. at 10; <u>id.</u> at 28.[8] Based on the Objection, the Trustee also views the petition date as the dispositive time for fixing household size. Debtor, however, asserts that when the petition was filed he had three dependents so as to have a "household" of four persons for the purpose of § 1325(b)(4). On the other hand, the Trustee contends that, as of the petition date, Debtor lived in a one-person household.

In determining the size of Debtor's "household," I must construe a term not defined in the Bankruptcy Code. Debtor and the Trustee have agreed that, to be in Debtor's household as of the petition date, it is not sufficient that Singleton and her children simply lived under Debtor's roof. Rather, Debtor and the Trustee agree that Singleton and her children had to have been Debtor's "dependents." Debtor's counsel proposes a definition of dependent based, in part, upon the Internal Revenue Code, specifically that Debtor provided

---

[8] Section 1325(b) is a provision of BAPCPA that is far from clear in many respects. That the measuring date for determining the applicable commitment period may be the confirmation date, not the petition date, <u>see</u> In re Fleishman, 372 B.R. 64 (Bankr. D. Ore. 2007), is not before me as Debtor's counsel has stipulated that I should determine Debtor's household size at the date of filing of the petition. I have done so and leave to another day a number of questions for which the statute provides no ready answer.

at least 50% of their support. See 26 U.S.C. § 152.[9] Tr. at 31. The Trustee's counsel provided no input on the applicable standard, but did not dispute the position espoused by Debtor's counsel.[10] I will therefore accept the parties' assumption that a dependency element is required for Singleton and her children to be considered part of Debtor's household.

The issue, as framed by the parties, is ultimately decided on the burden of proof for an objection under 11 U.S.C. § 1325(b). That burden is a shifting one, where the Trustee is initially required to produce satisfactory evidence that Debtor's plan does not provide all of the Debtor's projected disposable income to be received in the applicable commitment period. Once this burden is met, the burden shifts to Debtor to demonstrate, by a preponderance of the evidence, that he has done so. In re Barnes, 378 B.R. 774, 777 (Bankr. D. S.C. 2007) (*citing* In re McGilberry, 298 B.R. 258, 260 (Bankr. M.D. Pa. 2003)). Debtor retains the ultimate burden for all elements of plan confirmation. In re Loper, 367 B.R. 660, 664 n.5 (Bankr. D. Colo. 2007).

The Trustee contends that Debtor is not committing all his disposable income received during the applicable commitment period because his plan only provides for payment over

---

[9] There are additional I.R.C. requirements for dependency status, such as gross income below the exemption amount, and that the individual not be a "qualifying child" of any other taxpayer. See 26 U.S.C. § 152. These requirements were not addressed by Debtor.

[10] While there is some support in the case law for using a plain meaning and therefore broader definition of "household," that view has not been urged by the Debtor. Compare In re Ellringer, 370 B.R. 905, 910-11 (Bankr. D. Minn. 2007) (applying the Census Bureau definition of "household", i.e., "all of the people, related or unrelated, who occupy a housing unit") with In re Jewell, 365 B.R. 796, 800-801 (Bankr. S.D. Ohio 2007) (adopting a debtor-support requirement for household members).

a three year period. In support of his position that the applicable commitment period is five years, he has elicited evidence that Debtor's household was one person as of the petition date. He points to Debtor's admission that he did not intend that Singleton and her children moving in with him would effect his financial obligations or bankruptcy case – that they would each "do their own thing." His Form 22C and Schedules filed contemporaneously with the petition and the amendment to the Form 22C filed as late as August 2007, all submitted under penalty of perjury and apparently without this issue in mind, indicate that he was not supporting anyone other than himself. The Trustee has met his burden of persuasion, requiring the Debtor to establish by a preponderance of the evidence the existence of three dependents on the petition date.

The record establishes that Singleton and her children resided with Debtor as of the petition date at which time he provided them a home and perhaps some incidental support. While it may not have taken long before Debtor had to "step up" and provide additional support to Singleton, there is no evidence that they became Debtor's dependents in the short one-month period between the cohabitation and the petition date. Any statement by Debtor to that fact was vague and conclusory. There is no doubt that the loss of Singleton's job in July 2007, four months after the filing, resulted in some level of increased support from Debtor. However, the record is bare as to the amount of support he provided on the petition date and what proportion of her and her children's total support that entailed. For example, I don't know if Singleton was receiving any public assistance for herself and her children or child support from the other father. Given Debtor's counsel's assertion that dependency

-8-

exists where the Debtor provides at least 50% of the support, the absence of any concrete evidence as to the support he provided to Singleton and her children is fatal to his own position.[11] Thus, the record does not support that Debtor had a household of four as of the petition date.

Because I find that Debtor has not met his burden to establish the requirements of § 1325(b), the Objection is sustained and confirmation is denied. An order consistent with this Memorandum Opinion shall be entered.

                                                    DIANE WEISS SIGMUND
                                                    Chief U.S. Bankruptcy Judge

Dated: February 28, 2008

---

[11] Even the Amended Schedules I & J filed months after the petition date do not make his case. Notably the monthly net income derived after current expenditures were subtracted from current income remains essentially the same, ensuring that the plan payment did not increase even though the Debtor has apparently abandoned any attempt to retain his investment properties that were budgeted at $2,000 per month. Doc. No. 118 & 123. The Amended J shows increases in food ($150 to $400), medical ($150 to $200) and transportation ($150 to $200). It also shows for the first time a gas and cable expense. It shows no increase in clothing, insurance or automobile. Since some of those expenses had to have existed before (e.g., gas and cable), it is hard to attribute the increase to Singleton et al. Moreover, since some of the unchanged expenses would, with the addition of new household members, have had to exist (e.g., clothing), another source of support may be funding them.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ANTHONY W. REDLEY, | : | Bankruptcy No. 07-11534DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 28th day of February 2008, upon consideration of the objection of the Chapter 13 Trustee (the "Objection") to confirmation of Debtor's Fourth Amended Plan, after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Objection is **SUSTAINED**. Confirmation of the Fourth Amended Plan is **DENIED**.

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge